IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Stanhope A. Ford,                                    Case No. 3:07CV1828

                  Plaintiff

      v.                                          ORDER

Owens-Illinois, Inc.,

                  Defendant


This is a case about retirement and health care benefits. Plaintiff, Stanhope A. Ford alleges that his former employer, defendant, Owens-Illinois, Inc. [Owens-Illinois] breached an agreement to pay certain benefits to which he was entitled under the agreement.

Jurisdiction is proper under 18 U.S.C. § 1332.

Pending is defendant's motion to dismiss plaintiff's amended complaint [Doc. 36]. For the reasons discussed below, defendant's motion shall be granted.

**Background**

In December, 2003, Ford was Vice President, Director of Operations, International for Owens-Illinois' Plastic Container Division. Ford was a covered employee under Owens-Illinois' Salaried Retirement Plan [the Plan].

On or about December 18, 2003, Owens-Illinois offered Ford additional retirement benefits if he would agree to remain employed until September 30, 2006. The written agreement provided, *inter alia*, that Ford would "be entitled to retire pursuant to the 'RIF' [Reduction in Force] retirement

provisions of the Company's Salaried Retirement Plan with [his] retirement benefit calculated on the base of eighty (80) age service 'RIF' points" if "prior to 9/30/2006, while [Ford is] an employee of the Company, there is any materially adverse change in [his] job duties, responsibilities, compensation including compensation level . . . or benefits including pension benefits." [Doc. 33-1]. Ford signed the agreement and remained an Owens-Illinois employee.

In December, 2004, Owens-Illinois announced that it planned to make certain changes to the Plan. The modified plan would no longer pay RIF retirement benefits. Ford sought written assurance that the December 18, 2003, letter agreement was still valid.

In response, Owens-Illinois wrote Ford on December 28, 2004, stating, *inter alia*:

1. You are correct in your understanding that subparagraph (2) on page 1 of your December 18, 2003 letter agreement (the "Agreement") has been triggered.

2. Pursuant to the Agreement, you can retire at any time prior to 9/30/2006 and receive the RIF retirement benefits specified in the Agreement.

3. You do not need to take any action at this time to confirm or secure your rights under the agreement.

4. In the event you were to retire before 9/30/2006, your RIF retirement benefit would be payable in the following manner (reflecting the 1/1/05 amendment of the Salaried Retirement Plan):

> a. a lump sum (if so elected) amount calculated as of 12/31/04 and payable in part from the Qualified Plan and in part from the Nonqualified Plan; and

> b. an annuity amount calculated based on your final covered compensation and your service from 1/1/05 until your retirement date (a part of which annuity may likewise be paid from the Nonqualified plan).

[Doc. 33].

2

In the December 28, 2004, letter, Owens-Illinois also offered to provide projections of Ford's retirement benefits as of September 30, 2006, or an alternate date. Ford obtained such projections from Owens-Illinois in June, 2005. These projections indicated that he would be entitled to a qualified plan benefit lump sum distribution ranging between $995,872.06 and $1,017,279.11.

Ford asserts that, but for this written assurance, he would have retired no later than December 31, 2004.

Owens-Illinois implemented the announced changes to the Plan effective January 1, 2005. Ford retired on July 1, 2006.

At that time, Owens-Illinois paid Ford retirement and other benefits based on its January 1, 2005, changes to the Plan. It refused to pay the benefits described in the December 18, 2003, and December 28, 2004, letters. According to Ford, Owens-Illinois asserted that the January 1, 2005, changes to the Plan eliminated any prior agreement between the parties.

Ford states that a "qualified plan lump sum distribution provides substantial tax advantages as it may be rolled over into an Individual Retirement Account (IRA), deferring immediate taxation, and permitting tax free growth. It also permits deferred withdrawals until a period after the beneficiary attains the age of 70 years and six months." [Doc. 33].

Ford presently asserts claims against Owens-Illinois sounding in breach of contract, misrepresentation and promissory estoppel:

> Owens-Illinois, Inc. breached and defaulted upon its agreement with plaintiff by refusing to pay him the qualified plan lump sum distribution retirement and other benefits which it had promised to him, and by refusing to pay them to him in the manner in which it had promised to do so, causing him to incur both financial losses and adverse tax consequences which would have been avoided had defendant Owens-Illinois, Inc. performed as it had agreed  .  .  .  As a direct and proximate result of defendant's breach, plaintiff has been damaged in an amount reasonably believed to be not less than Two Million Dollars ($2,000,000.00).

3

[Doc. 33].

> Owens-Illinois, Inc. knowingly represented to plaintiff that he would receive retirement and health care benefits that it knew it had unilaterally revoked, intending to induce him to continue his employment with it . . . Plaintiff in good faith reasonably and detrimentally relied upon such assurances . . . Either as a result of its promises and assurances, or as a result of plaintiff's detrimental reliance, defendant Owens-Illinois, Inc. is estopped from declining to pay plaintiff the benefits it had promised . . . If defendant Owens-Illinois, Inc. cannot perform its promises because of its unilateral modification of [the Plan], it can pay to plaintiff the financial equivalent of what it promised . . . Defendant Owens-Illinois owes plaintiff the sum of Two Million Dollars. ($2,000,000.00).

[Doc. 33].

> Pleading alternatively, defendant Owens-Illinois, Inc. deceptively induced Ford to refrain from retiring on December 31, 2004 by misrepresenting to him that it would continue to honor its December 18, 2003 agreement with him, even when it knew that it would not or could not do so as a result of the changes to its Salary Retirement Plan made effective as of January 1, 2005 . . . Plaintiff in good faith reasonably and detrimentally relied upon such representations, unaware that they were false and misleading . . . As a direct and proximate result of the deceit by Owens-Illinois, Inc., plaintiff has been damaged, in terms of lost retirement and health care benefits, in an amount of Two Million Dollars ($2,000,000.00).

[Doc. 33].

Owens-Illinois contends that the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* [ERISA] preempts Ford's claims. Ford responds that his claims do not sufficiently relate to ERISA and are thus not preempted.

### Standard of Review

Under Rule 12(b)(6), a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).[1] Plaintiff must offer "either direct or inferential allegations respecting all the material

---

[1] Defendant attached copies of the Plan documents to its memorandum in support of the motion to dismiss. Defendant correctly notes that, because the Plan is central to plaintiff's complaint,

4

elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Although the factual allegations in a complaint need not be detailed, they must sufficiently "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Assoc. of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007); *see also Twombly*, *supra*, 550 U.S. at 553-55.

In making this determination, I am to take all factual allegations in the complaint as true, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and "draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). It is not my function, at this stage, to weigh evidence or evaluate credibility. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

## Discussion

### 1. ERISA Plans

ERISA governs "employee benefit plan[s]", which it defines as an "employee welfare benefit plan," an "employee pension benefit plan," or a plan that is both. 29 U.S.C. § 1002(3).

Ford does not dispute that the Plan is an ERISA-governed plan. Owens-Illinois does not dispute Ford's contention that the December 18, 2003, and December 28, 2004, letters are not independently ERISA-governed plans.

─────────────────

this attachment does not convert the motion into one for summary judgment. *See, e.g.*, *Teagardener v. Republic-Franklin, Inc.*, 909 F.2d 947, 950 (6th Cir. 1990).

Ford attached the deposition of Danny Pennywitt to his memorandum in opposition to the motion to dismiss. I decline to consider the deposition as it is outside of the pleadings and would convert the present motion to dismiss to a motion for summary judgment, which I believe is inappropriate at this juncture. Fed. R. Civ. P. 12(d); *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000); *Batt v. U.S.*, 976 F. Supp. 1095, 1096-97 (N.D. Ohio 1997) ("The decision to exclude material outside the pleadings is entirely within the discretion of the trial court.").

Ford argues that because his claims arise from promises made in the two letters, they do not bear a sufficient nexus to ERISA to warrant preemption. Owens-Illinois contends that because the claims seek benefits allegedly owed under an ERISA-governed plan, ERISA preempts the claims. As discussed below, Owens-Illinois's contention is well-taken and I find Ford's claims preempted by ERISA.

## 2. ERISA Preemption

ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The statutory language is "deliberately expansive and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). A federal statute may preempt state law "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). ERSIA can preempt state law contract and tort claims. *Pilot Life*, *supra*, 481 U.S. at 48. Indeed, ERISA preempts "virtually all state law claims relating to an employee benefit plan." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1278 (6th Cir. 1991).

The Supreme Court has, however, "narrowed the preemptive scope of ERISA, moving away from the broadest meaning of the provision," and now looks to "the objectives of ERISA to guide its preemption decisions." *Penni/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) [*PONI*]. Some state laws have "too tenuous, remote, or peripheral" an effect on ERISA-governed plans to say that they "relate to" the plan for preemption purposes. *Shaw v. Delta Airlines*, 463 U.S. 85, 100 n. 21 (1983). "The purpose of ERISA preemption was to avoid

6

conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans." *PONI*, *supra*, 399 F.3d at 698.

The Sixth Circuit explained its ERISA preemption analysis recently in *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 861 (6th Cir. 2007):

> In deciding whether a state-law claim is . . . preempted by ERISA, our precedents focus on whether the remedy sought by a plaintiff is primarily plan-related. *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir. 2003). Recently, however, we have identified three categories of claims that ERISA clearly preempts: state-law claims "that (1) 'mandate employee benefit structures or their administration;' (2) provide 'alternate enforcement mechanisms;' or (3) 'bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself'" [*PONI*, *supra*,] 399 F.3d [at] 698 (quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)). With respect to claims that do not fall within these three categories, we continue to follow our prior precedent that focuses on the nature of the remedy sought by a plaintiff.

In determining whether a claim is preempted by ERISA, "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell*, *supra*, 944 F.2d at 1276. To determine whether a claim "relates to" the Plan at issue, I consider "the kind of relief that plaintiff seeks and its relation to the plan." *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005).

The court in *Thurman*, *supra*, 484 F.3d at 862, summarized the distinction between misrepresentation claims which ERISA preempts and those it does not preempt:

> As *PONI* explained, "[i]n reviewing whether ERISA preempts a state-law negligent-misrepresentation claim . . . ERISA preemption . . . turn[s] on . . . the true nature of the issues underlying the claim." [*PONI*, *supra*, 399 F.3d] at 703. Further, the Court noted, "[w]here resolution of the misrepresentation claim necessarily requires evaluation of the plan and the parties' performance pursuant to it, the claim is preempted." *Id.* In the alternative, where the resolution of a misrepresentation claim does not require interpreting the parties' responsibilities under the plan, or where the requested remedy refers to the plan only for the purpose

7

of defining "specific, ascertainable damages," we have held that such claims are not preempted. *Marks*, 342 F.3d at 452.

In *Marks*, *supra*, 342 F.3d at 453, plan administrators rejected an employee's claim under a severance plan. Plaintiff filed suit alleging state law claims of breach of contract, fraud and misrepresentation. He claimed that his employer fraudulently induced him to accept employment and to accept changes to the existing insurance plan.

The district court dismissed all state law claims as preempted. The court of appeals affirmed the district court in part, holding that — to the extent that the employee alleged that the employer misled him into not exercising his rights under the plan — ERISA preempted those claims. *Id.* The court of appeals also reversed in part, holding that the employee's claims for fraud and misrepresentation were not preempted. That was so, the court held, insofar as the alleged misrepresentations induced the plaintiff to accept work in the first instance and purchase company stock.

The court also reversed the trial court's preemption dismissal as to a breach of contract claim. If true, plaintiff's allegations that, "without cause, [defendant] significantly altered his duties and reduced his compensation," might, the court stated, "constitute a breach of [plaintiff]'s employment contract *irrespective of the plan*, [so that] the breach of contract claim is not preempted." *Id*. (emphasis added).

A later Sixth Circuit panel interpreted *Marks* to mean that, "any contention that the employer had defrauded [the plaintiff] of *plan benefits* would 'relate to' the plan and be subject to preemption." *Briscoe v. Fine*, 444 F.3d 478, 499 (6th Cir. 2006) (emphasis added).

In *Thurman*, *supra*, 484 F.3d at 860-65, the court again addressed ERISA preemption of state law misrepresentation claims. In that case, plaintiff, after being told that on retirement he would be

8

entitled to a $3,100 monthly pension, left a better paying job in Ohio to work for defendant in Michigan. After taking the job, plaintiff learned that he would only be entitled to a pension of $816 per month. *Id.* at 858.

Plaintiff, seeking rescission of his participation in the plan and compensatory damages, sued the defendant on theories of fraudulent and innocent misrepresentation. The district court held that ERISA preempted all his claims. *Id.* at 859.

Although on appeal the plaintiff in *Thurman* dropped the damage claim based on the promised enhanced pension benefit, the court noted:

> [T]he crux of the matter is the nature of the remedies that Thurman requests. For this reason, to the extent that his claims are based on the expectation damages that Thurman requested in his complaint (i.e., the difference between the benefits promised and the benefits to which he was entitled), they are clearly preempted. However, Thurman's state-law *claims for other benefits* lost in reliance on the alleged misrepresentation—for example, decreased wages, moving expenses, and forfeited stock options—have such a tenuous, remote, or peripheral effect on the plan" that they are not preempted.

*Id.* at 862 (emphasis added) (internal quotations and citations omitted); *see also id.* at 857 ("[T]he district court correctly ruled that Thurman's state-law claims were preempted to the extent that he requested expectation damages, which would require a calculation of plan benefits.").

Plaintiff correctly identifies this statement as dicta. Nonetheless, it gives helpful guidance as to the difference between claims that are preempted because they "relate to" ERISA and claims that, because they are "tenuous, remote or peripheral," ERISA does not preempt.

### 3. ERISA Preempts Ford's Claims

Each of plaintiff's claims is based on Owens-Illinois's failure to pay him the enhanced retirement benefits described in the December 18, 2003, and December 28, 2004, letters. The "nature of the remedy" Ford seeks is thus, "primarily plan related." *Thurman*, *supra*, 484 F.3d at 861.

In his first claim, Ford contends that Owens-Illinois "breached and defaulted upon its agreement with plaintiff by refusing to pay him the qualified lump sum distribution retirement and other benefits which it had promised him." [Doc. 33]. Ford asserts that "[a]s a direct and proximate result of defendant's breach, plaintiff has been damaged in an amount reasonably believed to be not less than  .  .  .  $2,000,000." [Doc. 33].

In his second claim, Ford contends that he "detrimentally relied" on Owens-Illinois's knowingly false representation and that this representation was "intended to induce him to continue his employment." [Doc. 33]. Under this claim, Ford states, "[d]efendant  .  .  .  owes plaintiff the sum of  .  .  .  $2,000,000." [Doc. 33].

Finally, in his third claim, Ford contends that Owens-Illinois:

deceptively induced [him] to refrain from retiring on December 31, 2004 by misrepresenting to him that it would continue to honor its December 18, 2003 agreement with him, even when it knew that it would not or could not do so as a result of the changes to [the Plan] made effective as of January 1, 2005.

[Doc. 33].

Under this claim, Ford states, "[a]s a direct and proximate result of the deceit by defendant .  .  .  plaintiff has been damaged, in terms of lost retirement and health care benefits, in an amount of  .  .  .  $2,000,000." [Doc. 33].

Ford phrases each claim and assertion of damages slightly differently. Each seeks, however, retirement and health care benefits on the basis, as stated in the December 18, 2003, letter that continued employment will entitle him "to retire pursuant to the 'RIF' provisions of the company's Salaried Retirement Plan." Ford's breach of contract claim is based on Owens-Illinois' failure to pay him the benefits described in the letter.

10

Ford bases his second and third claims, which sound in promissory estoppel and misrepresentation, on further statements by Owens-Illinois about the Plan benefits which he was to receive on retirement. Each of these claims therefore "relates to" the Plan. 29 U.S.C. § 1144(a).

Plaintiff argues that, as in *Marks*, ERISA does not preempt his claims because the Plan is only relevant to a calculation of damages.

The situation in *Marks* is distinguishable. In that case plaintiff rested his breach of contract claim on his employment contract, which was independent of the underlying benefit plan.[2] Ford, in contrast, alleges the breach of an agreement to pay certain retirement benefits under an ERISA-governed plan.

Ford's claims are analogous to the expectation damages claim in *Thurman* ("the difference between the benefits promised and the benefits to which he was entitled"). Though in dicta, the Sixth Circuit stated that plaintiff's claim for damages was "clearly preempted." 484 F.3d at 862. Here, like the plaintiff in that case, Ford seeks Plan benefits he claims Owens-Illinois promised but did not provide.

To be sure, plaintiff's contention that "not even all suits for the recovery of benefits under an ERISA plan are preempted" [Doc. 39] is true. But the cases he cites to support of this proposition involve wrongful discharge and employment discrimination – neither of which is at issue here. *See Wright v. General Motors Corp.*, 262 F.3d 610, 615 (6th Cir. 2001) (holding that ERISA did not preempt race and sex discrimination claims, even though one component of alleged damages was

---

[2]"Marks alleges that, without cause, Newcourt significantly altered his duties and reduced his compensation. Because this conduct may constitute a breach of [the] employment contract *irrespective of the plan*, the breach of contract claim is not preempted." 342 F.3d at 453 (emphasis added).

11

benefits under a retirement plan); *McDowell v. Ohio Outdoor Advertising Corp.*, 1999 WL 1491773 (N.D. Ohio) (holding ERISA did not preempt sex and age discrimination claims).

The court in *Wright* distinguished between "a lawsuit claiming race and sex discrimination and retaliation resulting in damages, one component of which is a sum owed under [an ERISA-governed plan], which was not preempted, and "a lawsuit claiming wrongful withholding of ERISA covered plan benefits," which would be preempted. 262 F.3d at 615. Ford, in contrast, seeks solely to recover the Plan benefits promised in the letters from Owens-Illinois.

Resolution of Ford's claim "necessarily requires evaluation of the plan and the parties' performance pursuant to it." *PONI*, *supra*, 399 F.3d at 703. I conclude that Ford's claims are "in essence, claim[s] for the recovery of an ERISA plan benefit," *Cromwell*, *supra*, 944 F.2d at 1276, and are preempted by ERISA.[3]

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Defendant's motion to dismiss plaintiff's amended complaint [Doc. 36] be, and the same hereby is granted without prejudice to plaintiff's right to file a further amended complaint; and

2. Leave be, and the same hereby is granted to plaintiff to file on or before November 30, 2009, an amended complaint stating claims under ERISA, if grounds for such amendment exist.

---

[3] Plaintiff asks that I give him leave to file an amended complaint to state ERISA-based claims if I grant defendant's motion. Without prejudging the merit of such claims, I grant that request.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

13